IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

LIZARD APPAREL AND
PROMOTIONS, LLC, *et al.*,

    Plaintiffs,

v.

IMPACT DESIGN, LLC, d/b/a
ALLCUSTOMWEAR.COM, *et al.*,

    Defendants.

Case No. 3:16-cv-238

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING DEFENDANTS IMPACT DESIGN LLC, d/b/a ALLCUSTOMWEAR.COM, AND JOSHUA BATZ'S MOTION TO DISMISS CLAIMS II, III, IV, V, VI, VIII AND IX OF PLAINTIFFS LIZARD APPAREL AND PROMOTIONS, LLC, AND ELIZABETH L. LYBROOK'S SECOND AMENDED COMPLAINT (DOC. #33); CLAIMS II (DETRIMENTAL RELIANCE/PROMISSORY ESTOPPEL), III (UNJUST ENRICHMENT), IV (TORTIOUS INTERFERENCE WITH CONTRACT, V (ACCOUNTING), VI (BREACH OF FIDUCIARY DUTY), VIII (PUNITIVE DAMAGES) AND IX (INJUNCTIVE RELIEF) OF THE SECOND AMENDED COMPLAINT (DOC. #29) ARE DISMISSED WITH PREJUDICE, AND JUDGMENT SHALL ULTIMATELY ENTER IN FAVOR OF DEFENDANTS AND AGAINST PLAINTIFFS ON THOSE CLAIMS; PLAINTIFFS' PRAYER FOR INJUNCTIVE RELIEF IS STRICKEN; PLAINTIFFS MAY, WITHIN FOURTEEN DAYS OF THIS ENTRY, FILE A THIRD AMENDED COMPLAINT THAT SETS FORTH AN APPROPRIATE PRAYER FOR INJUNCTIVE RELIEF; PLAINTIFFS' CLAIMS ONE (BREACH OF CONTRACT) AND SEVEN (DEFAMATION) AGAINST DEFENDANTS SHALL PROCEED TO DISCOVERY

---

In 2013, Plaintiffs LIZard Apparel and Promotions, LLC ("Lizard" or "LIZard") and Elizabeth L. Lybrook ("Lybrook"), Lizard's owner and operator (collectively "Plaintiffs"), entered into a contract with Defendant Impact Design, LLC, d/b/a Allcustomwear.com ("Impact" or "Impact/ACW"), by which Impact would design and host e-commerce

websites, through which Lizard's customers would order and pay for Lizard's products. Also, Impact was responsible for collecting payments from Lizard's customers and remitting a portion of those payments to Lizard. *See* Doc. #29, ¶¶ 9-19, PAGEID #234-35 (overview of relationship between Lizard and Impact). The relationship between the parties soured, and on or about February 22, 2016, Impact President Joshua Batz ("Batz") proposed to Lybrook that Impact and Lizard "separate their business relationship at the end of their contract terms[,] which was [*sic*] June 30, 2016[.]" *Id.*, ¶ 37, PAGEID #238. However, on April 15, 2016, Impact "unilaterally terminated its relationship and contracts [with Lizard,] including access to all sites except Signature Healthcare." *Id.*, ¶ 42. Further, Impact did not remit to Lizard its contractually-allotted portion of sale proceeds after January 31, 2016. *Id.*, ¶ 44, PAGEID #239.

On October 20, 2016, Plaintiffs filed their Second Amended Complaint. Doc. #29. On October 25, 2016, Impact and Batz (collectively "Defendants") filed a Motion to Dismiss Claims II (Detrimental Reliance/Promissory Estoppel), III (Unjust Enrichment), IV (Tortious Interference), V (Accounting), VI (Breach of Fiduciary Duty), VIII (Punitive Damages) and IX (Injunctive Relief) ("Motion"). Doc. #33. For the reasons set forth below, their Motion is SUSTAINED.

## I. FACTUAL BACKGROUND[1]

In 2013, Lybrook founded Lizard to "sell[] custom uniform programs to the healthcare industry and other industries." Doc. #29, ¶ 6, PAGEID #233. Lybrook

---

[1] As Defendants' Motion is brought under Rule 12(b)(6), the Court, for the purposes of the Motion, must treat Plaintiffs' well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

2

"approached [D]efendant Impact/ACW to provide an online platform (*i.e.*[,] to host online webstores) and to assist her in the development of her customer specific online e-commerce webstores, as well as, provide order fulfillment, product returns and back office support." *Id.*, ¶ 9, PAGEID #234. Through a March 7, 2013, Engagement Letter, Lizard and Impact entered into a contract, under which Impact agreed to provide website design, hosting and customer service ("Bilateral Agreement") for Lizard. Doc. #29-1, §§ 1.1, 1.3-1.5, PAGEID #249. Further, Impact would collect payment from Lizard's end users and remit twenty percent of the proceeds to Lizard on a monthly basis. *Id.* §§ 3.1-3.2, PAGEID #250. As part of the Bilateral Agreement, Impact agreed to "not knowingly provide an eCommerce site to any of [Impact's] competitors that is intended for presentation or use at one of [Lizard's] own customers where the Impact Design solution has been presented." *Id.*, § 4. The Bilateral Agreement was terminable at-will. *Id.*, § 10.1, PAGEID #251.

"As LIZard sold their [*sic*] custom e-commerce webstore uniform program, LIZard and Impact/ACW entered into specific agreements[2] which related to each party's obligations to ] LIZard's clients/end users." Doc. #29, ¶ 20, PAGEID #235. Impact agreed that it would not solicit the Lizard customer that was the subject of the particular Sales Representative Agreement. Doc. #29-2, PAGEID #253. Each such Agreement was terminable at-will.

Finally, Lizard entered into bilateral contracts ("Service Agreements") with each of its end users. These Service Agreements were to continue for an initial term of thirty-six months. Doc. #29-3, § 5.1, PAGEID #259. However, the Service Agreements

---

[2] Hereinafter referred to as "Sales Representative Agreements."

3

allowed both Lizard and its end user to terminate the Agreement prior to the expiration of the initial term, without cause, subject to the terminating party providing timely written notice. *Id.*, § 5.4; Doc. #29-7, § 5.4, PAGEID #268.

In 2015, however, Impact began selling "custom uniform programs in direct competition with LIZard." Doc. #29, ¶ 32, PAGEID #237. After Plaintiffs rejected Defendants' offer for Lizard to become a subsidiary of Impact, "LIZard began exploring other options for her [*sic*] business[,] including a different platform vendor[.]" *Id.*, ¶ 35. "On February 22, 2016, Impact/ACW . . . proposed that the parties separate their business relationship at the end of their contract terms[,] which was [*sic*] June 30, 2016[,] and pledged to support LIZard's end users/customers until that date." *Id.*, ¶ 37, PAGEID #238. In response, Plaintiffs, in April 2016, began using a new host for the clients they acquired after February 22, 2016, *id.*, ¶ 41, and on April 15, 2016, Impact "unilaterally terminated its relationship and contacts [with] LIZard[,] including access to all sites except Signature Healthcare." *Id.*, ¶ 42.

In June 2016, Lizard filed the initial Complaint, Doc. #2, and two Motions for Temporary Restraining Order and Preliminary Injunction ("TRO Motions"), Doc. #3, 12, against Impact and Batz. The parties subsequently resolved the subject matter of the TRO Motions, Doc #24, and Plaintiffs filed a Second Amended Complaint, Doc. #29, adding Lybrook as a plaintiff.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must provide the defendant with "fair notice of what the . . . claim is and the

4

grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Rule 12(b)(6) allows a party to move for dismissal of a complaint on the basis that it "fail[s] to state a claim upon which relief can be granted." The moving party "has the burden of showing that the opposing party has failed to adequately state a claim for relief." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)). The purpose of a Rule12(b)(6) motion "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). In ruling on a Rule 12(b)(6) motion, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its [well-pleaded] allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Treesh*, 487 F.3d at 476).

Nevertheless, to survive a Rule 12(b)(6) motion, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Unless the facts alleged show that the plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint must be dismissed." *Id*. Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id*. at 555. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Legal conclusions "must be supported by well-pleaded

5

factual allegations . . . [that] plausibly give rise to an entitlement of relief." *Id.* at 679. "Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

The Court's review of a Rule 12(b)(6) motion is generally confined to the four corners of a complaint; nonetheless, "a [C]ourt may consider 'exhibits attached to the complaint, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss' without converting the motion to dismiss into a motion for summary judgment." *Thomas v. Noder-Love*, No. 13-2495, 621 F. App'x 825, 828 (6th Cir. 2015) (quoting *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011)).

## III. ANALYSIS

### A. Claim Two: Detrimental Reliance or Promissory Estoppel

Plaintiffs title Claim Two "Detrimental Reliance," Doc. #29, ¶¶ 53-61, PAGEID #240-41, but concede, in their memorandum *contra*, that no such cause of action is recognized under Ohio law. Doc. #38, PAGEID #332. Nonetheless, Plaintiffs argue that Claim Two adequately sets forth a claim for promissory estoppel, a cause of action recognized in Ohio: when "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance[,]" that promise "is binding if injustice can be avoided only by enforcement of the promise." *Id.*, PAGEID #333 (quoting *McCroskey v. State*, 8 Ohio St. 3d 29, 30, 456 N.E.2d 1204 (1983); Restatement (Second) of

6

Contracts, § 90 (1973)). They claim that, on or about February 22, 2016, Defendants represented to them that they would continue to host the e-commerce websites for Lizard's existing customers until June 30, 2016, even though Defendants would not host webstores for any of Lizard's new customers acquired on or after that date. *Id.* Plaintiffs claim that, in reliance on Defendants' promise, they "began selling [their] new platform without concerning [themselves] with any repercussions or the conversion of existing stores." *Id.* (citing Doc. #29, ¶ 59, PAGEID #240). Yet, when Defendants abruptly and unilaterally terminated the contract on April 15, 2016, Plaintiffs "had to expend additional money to convert existing clients immediately[,] as the lack of access made it impossible to service her clients." *Id.* (citing Doc. #29, ¶ 60, PAGEID #240). Plaintiffs argue that, because Rule 8(d)(3) "allows for alternative claims of relief[,] . . . promissory estoppel is one alternative to a breach of contract[,]" *id.*, PAGEID #334, and Plaintiff has set forth a plausible promissory estoppel claim, Defendants' Motion should be overruled as to Claim Two. *Id.*

Plaintiffs' argument is unfounded in law and belied by their pleading. As Plaintiffs note in their memorandum *contra*, promissory estoppel is a quasi-contractual, equitable remedy. Doc. #38, PAGEID #332 n.1. Yet the Second Amended Complaint alleges that "Batz <u>proposed</u> the termination of the relationship between [Lizard] and Impact/ACW[,]" Doc. #29, ¶ 55, PAGEID #240 (emphasis added) and that "LIZard <u>accepted</u> Impact/ACW's proposal[.]" *Id.*, ¶ 56 (emphasis added). The Court may not reasonably infer, from Plaintiffs' allegations, that Defendants' proposal was a unilateral promise intended to induce reliance by Plaintiffs. Rather, even accepting as true Plaintiffs' allegation that the parties' agreed-upon termination of their relationship was

7

"[i]n addition to these [Bilateral and Sales Representative A]greements" between them, *id.*, ¶ 55, Plaintiffs have alleged the existence of a separate contract and Defendants' breach of same. Whether stylized as detrimental reliance or promissory estoppel, Plaintiffs' Claim Two is not viable under quasi-contract.

Further, as Defendants correctly argue, Doc. #33, PAGEID #295; Doc. #41, PAGEID #349, Claim Two is duplicative of Claim One, and is not viable as an independent breach of contract claim. Claim One is premised on Plaintiffs' claims that: (1) the Sales Representative Agreements required Defendants to host Lizard's webstores for existing customers until the end of the agreements on June 30, 2016; and (2) the Bilateral Agreement required Defendants to continue to remit sale proceeds from the webstores to Plaintiffs until that date. Doc. #29, ¶¶ 37-38, 44, PAGEID #238, 239. These obligations mean that Defendants' April 15, 2016, blocking of access to websites and failing to remit monies to Plaintiffs constituted breaches of those Agreements. *Id.*, ¶ 50, PAGEID #239. In light of the aforesaid, Defendants' proposal to continue servicing existing customers, and Plaintiffs' acceptance of same, does not constitute a novation, modification, or side agreement. At most, it is an expression of understanding by the parties that they would work together until the Sales Representative Agreements expired. Plaintiffs' allegations provide no basis for a cause of action independent of the Bilateral and Sales Representative Agreements.

In sum, Plaintiffs did not, and cannot, allege a claim regarding the subject matter of Claim Two that is both plausible and factually distinct from Claim One. Accordingly, Claim Two must be dismissed with prejudice.

### B. Claim Three: Unjust Enrichment

Plaintiffs claim that, after Defendants terminated the Sales Representative and Bilateral Agreements on April 15 and June 21, 2016, respectively, they continued to collect money from Plaintiffs' end-users, but failed to remit to Plaintiffs their allotted portion of the sale proceeds. Doc. #29, ¶¶ 63-65, PAGEID #241. Further, Plaintiffs allege, "Impact/ACW continues to provide a uniform program to Signature Healthcare in violation of the agreements between the parties (*i.e.*[,] that they will not compete)." *Id.*, ¶ 68. Plaintiffs claim that, as a result of Defendants keeping all sale proceeds and breaching the parties' covenant not to compete, Defendants were "unjustly enriched in an amount in excess of $500,000.00." *Id.*, ¶ 69.

Defendants argue that Plaintiffs' allegations are identical to those in Claim One (Breach of Contract), and that "[a]bsent fraud, bad faith, or illegality, unjust enrichment is not available as a remedy where the legal relationship between the parties is governed by a valid and enforceable contract." Doc. #33, PAGEID #295 (citing *DavCo Acquisition Holding, Inc. v. Wendy's Int'l, Inc.*, No. 2:07-cv-1064, 2008 WL 755283, at *12 (S.D. Ohio Mar. 19, 2008) (Graham, J.); *see also Aultman Hosp. Ass'n v. Cmty. Mut. Ins. Co.*, 46 Ohio St. 3d 51, 55; 544 N.E.2d 920 (1989) (when "[t]he record does not reveal that [a defendant] received unjust enrichment outside the parameters of the express contract[,] [i]n the absence of fraud, illegality or bad faith, the [plaintiffs] are entitled to compensation only in accordance with the terms of the written agreement."). Defendants note that its obligation to remit proceeds, even after the terminations of the Bilateral and Sales Representative Agreements, is addressed in those contracts; thus, they claim, Plaintiffs have no viable unjust enrichment claim with respect to any failure to remit. *Id.*, PAGEID #297 (citing Doc. #29-1, § 3.2, PAGEID #250; Doc. #29-2,

9

PAGEID #253). Moreover, Defendants argue that, even assuming a valid non-compete agreement between the parties existed, and Defendants violated same by entering into business with Signature Healthcare ("Signature"), that violation would constitute a breach of contract, and unjust enrichment—a cause of action sounding in quasi-contract—would inapplicable. *Id.*

A viable unjust enrichment claim requires Plaintiffs to plausibly allege that: (1) they conferred a benefit upon Defendants; (2) Defendants knew of that benefit; and (3) Defendants retained the benefit "under circumstances where it would be unjust to do so without payment[.]" *Hambleton v. R.G. Barry Corp.*, 12 Ohio St. 3d 179, 183, 465 N.E.2d 1298 (1984). Plaintiffs argue that a material question of fact exists as to whether any valid contract existed between the parties after April 15, 2016; thus, if a trier of fact were to find that there was no contract between the parties after that date, then it would be unjust to allow Defendants to retain the benefit conferred upon them by Plaintiffs. Doc. #38, PAGEID #335-36. Plaintiffs claim that they conferred a non-contractual benefit upon Defendants through the latter's collection and retention of "months' worth of sales and revenue after they terminated the contracts[,]" made possible only by "the continued good faith actions of the Plaintiffs in servicing their clients[.]" *Id.*, PAGEID #335. As Rule 8 contemplates pleadings in the alternative, Plaintiffs argue that their unjust enrichment claim is viable. *Id.*, PAGEID #334.

While pleading claims in the alternative is permissible under Rule 8, the alternative claim still must set forth facts that plausibly give rise to relief under that theory, *Twombly*, 550 U.S. at 570. Plaintiffs have not met the *Twombly* and *Iqbal* standard as to Impact allegedly doing business with Signature. Indeed, such a claim is

10

contradicted by Plaintiffs' allegation that Impact is "provid[ing] a uniform program to Signature Healthcare <u>in violation of the agreements between the parties</u>." Doc. #29, ¶ 68, PAGEID #241 (emphasis added). As Plaintiffs have alleged nothing more than Defendants breaching the Bilateral and Sales Representative Agreements (*i.e.*, the subject matter of Claim One), to the extent that Claim Three arises from Impact and Signature's alleged relationship, it must be dismissed.

The remainder of Plaintiffs' unjust enrichment claim suffers from two acute defects. <u>First</u>, in neither the Second Amended Complaint nor the memorandum *contra* do Plaintiffs claim that they directly conferred any benefit upon Defendants. Rather, Plaintiffs argue, they conferred benefit through: (1) continuing to service their own clients after Defendants terminated the agreements; and (2) those clients continuing to pay Defendants for the products they bought from the webstores. Doc. #38, PAGEID #335. However, Plaintiffs cite to no caselaw suggesting that this indirect benefit can form the basis for an unjust enrichment claim. <u>Second</u>, the gravamen of Plaintiffs' Claim Three is that, after Defendants cut off access to the remaining webstores, they had to spend expend additional resources to expedite its transitioning of its existing customers to new webstores. Doc. #29, ¶¶ 39, 60, PAGEID #238, 240. Nowhere in the Second Amended Complaint do Plaintiffs allege that their existing customers used a webstore hosted by Defendants after April 15, 2016.

Thus, the Second Amended Complaint contains no allegations supporting Plaintiffs' argument that servicing their own customers bestowed an uncompensated benefit upon Defendants. Thus, Plaintiffs may not recover under an unjust enrichment theory, even as an alternative theory of liability, and Claim Three must be dismissed.

11

### C. Claim Four: Tortious Interference

Plaintiffs allege that they entered into agreements with each of their clients, including Signature, by which Plaintiffs agreed to create and maintain customer-specific webstores. Doc. #29, ¶¶ 71, 73, PAGEID #242 (citing Doc. #29-3, 29-7). Plaintiffs claim that, since February 22, 2016, Defendants have been contacting Plaintiffs' customers "for the sole purpose of retaining their business at the end of the[ir] current contractual term[s] with LIZard." *Id.*, ¶ 78. Plaintiffs further allege that Defendants began contacting Signature "after the filing of this lawsuit[,]" and that, as a result of those contacts, "Signature elected to terminate their agreement with LIZard effective July 31, 2016." *Id.*, ¶ 79, PAGEID #243. Finally, Plaintiffs claim, Defendants "have made representations to vendors used by the Defendants and LIZard[,]" *id.*, ¶ 80, and "[a]s a result of these representations the LIZard [*sic*] has lost the ability to purchase goods from preferred vendors[.]" *Id.*, ¶ 81.[3]

Defendants argue that, for three reasons, Claim Five is not viable: (1) no enforceable contract existed between Plaintiffs and Signature; (2) even if there was a contract, Plaintiffs were not damaged by Signature's termination thereof; and (3) because the Service Agreements between Plaintiffs and Signature (and their other customers or vendors) were terminable at-will, there could be no claim for tortious interference. Doc. #33, PAGEID #298-302.

The third reason is dispositive. A viable claim for tortious interference with contract must plausibly set forth the following: "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of

---

[3] In their memorandum *contra*, Plaintiffs concede that the latter portion of the claim is one for tortious interference with business relationship, rather than with contract. Doc. #38, PAGEID #340.

12

the contract's breach, (4) the lack of justification, and (5) resulting damages." *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St. 3d 171, 176, 707 N.E.2d 853, (1999). The Service Agreement between Plaintiffs and Signature, executed on July 1, 2013, provides that, "[a]fter the first sixteen (16) months of the Initial Term, this Agreement may be terminated at any time without cause by either party upon sixty (60) days' advance written notice to the other party." Doc. #29-7, § 5.4, PAGEID #268. Similarly, the Service Agreement between Plaintiffs and another customer allowed either party to "terminate this agreement without cause with ninety (90) days prior written notice of intent to terminate." Doc. #29-3, § 5.4, PAGEID #259. Plaintiffs do not allege that Signature or any of its other customers violated the written notice provision. Thus, even if Defendants did contact Plaintiffs' customers after February 22, 2016, and they did so intending to secure their business, Doc. #29, ¶¶ 77-78, PAGEID #242-43, Defendants could not have induced breaches of those Service Agreements.[4] Thus, Plaintiffs cannot set forth a viable claim for tortious interference with contract.

Plaintiffs' attempt to stylize Claim Four as one for tortious interference with business relationships, Doc. #38, PAGEID #339-40, is unavailing. Tortious interference with business relationships "generally occur[s] when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another." *A&B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St. 3d 1, 14, 651 N.E.2d 1283 (1995). Plaintiffs argue that Defendants were without privilege to contact Plaintiffs' customers "because of the contractual non-compete language." Doc. #38, PAGEID #340. Yet, as discussed

---

[4] Defendants, by allegedly contacting Plaintiffs' customers, may have breached the Sales Representative Agreements. However, Claim One provides Plaintiffs an adequate remedy for any such breach.

13

above, Plaintiffs and their customers had entered into contracts prior to any solicitation by Defendants. Thus, any solicitation—even if a breach of contract by Defendants—cannot form the basis of a tortious interference with business relationship claim. *See, e.g., Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co., Inc.*, 148 Ohio App.3d 596, 604, 2002-Ohio-3932, 774 N.E.2d 775, ¶ 23 (3d Dist.) ("tortious interference with a business relationship . . . includes intentional interference with prospective contractual relations, not yet reduced to a contract.").

Plaintiffs do allege that "Defendants . . . have made representations to vendors used by the Defendants and LIZard[,] Doc. # 29, ¶ 80, PAGEID #243, and that "[a]s a result of these representations the LIZard [*sic*] has lost the ability to purchase goods from preferred vendors[.]" *Id.*, ¶ 81. However, the contention that Defendants were without privilege to make representations <u>to their own vendors</u> is facially implausible, and Plaintiffs set forth no facts that make it any less so. As Plaintiffs have failed to allege any viable claim for tortious interference, Claim Four must be dismissed.

### D. Claims Five and Six: Accounting and Breach of Fiduciary Duty

Plaintiffs allege that Defendants "had a contractual fiduciary duty to collect and account for all sums paid by third parties using the custom e-commerce webstores hosted[,]" Doc. #29, ¶ 90, PAGEID #244, and that Defendants breached that duty "by failing to account for money paid by third parties and by retaining Plaintiff's portions of revenue due under the contracts." *Id.*, ¶ 91. Plaintiffs ask that Defendants provide an accounting of all "sales made and monies collected on [Plaintiffs'] behalf" by Defendants from February 1, 2016, "through July 15, 2016." *Id.*, ¶ 88.

Defendants argue that Plaintiffs' Claim Six (Breach of Fiduciary Duty) and Claim One (Breach of Contract) "are nearly identical," as both involve Defendants allegedly failing to remit to Plaintiffs proceeds from purchases made by Plaintiffs' customers. *Id.*, PAGEID #304-05 (citations omitted). Thus, Defendants argue, Ohio's economic-loss doctrine, which bars recovery in tort for "losses suffered as a result of a breach of duties assumed only by agreement[,]" *Corporex Dev. & Constr. Mgmt., Inc. v. Shook, Inc.*, 106 Ohio St. 3d 412, 2005-Ohio-5409, 835 N.E.2d 701, ¶ 6 (quoting *Floor Craft Floor Covering, Inc. v. Parma Cmty. Gen. Hosp. Ass'n*, 54 Ohio St. 3d 1, 7, 560 N.E.2d 206 (1990)), mandates dismissal of Claim Six even if Defendants did owe and breach a fiduciary duty to Plaintiffs. Finally, Defendants argue that, because Plaintiffs' demand for an accounting is wholly derivative of their breach of fiduciary duty claim, Claim Five should be dismissed as well. Doc. #33, PAGEID #305-06.

The Court need not determine whether Plaintiffs have plausibly alleged the elements for a breach of fiduciary duty claim, because such a claim is barred by the economic-loss doctrine. Plaintiffs, in the Second Amended Complaint, allege that "Defendant Impact/ACW had a <u>contractual</u> fiduciary duty." Doc. #29, ¶ 90, PAGEID #244 (emphasis added). Plaintiffs do not allege that Defendants' duties to them survived the terminations of the Bilateral and Sales Representative Agreements; nor do the Agreements permit such an inference. Thus, Plaintiffs' alleged losses were caused by supposed breaches of contract, and nothing else. Under such circumstances, the economic-loss rule bars recovery in tort, and Claim Six must be dismissed.

The lack of a fiduciary duty outside of the contractual agreements is also fatal to Claim Five (Accounting). Even if Plaintiffs were to prove, as they allege, that

Defendants breached their duties to account for the sale proceeds from Plaintiffs' customers, and to remit to Plaintiffs portions of same, Doc. #29, PAGEID, ¶ 90, PAGEID #244, it is a well-settled principle of Ohio law that accounting, as an equitable remedy, is not available "where an adequate remedy is afforded at law." *Complete Bldg. Show Co. v. Albertson*, 99 Ohio St. 11, 16, 121 N.E. 817 (1918). As Claim One, Breach of Contract, is an adequate legal remedy for any damages suffered from Defendants' alleged malfeasance, accounting is not available as a remedy, and Claim Five must also be dismissed.

### E. Claim Eight: Punitive Damages

In their Motion, Defendants note, correctly, that "punitive damages" is not an independent cause of action under Ohio law. Doc. #33, PAGEID #306 (citing *Bishop v. Grdina*, 20 Ohio St. 26, 28, 485 N.E.2d 704 (1985), *superseded by rule on other grounds as stated in Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St. 3d 638, 635 N.E.2d 331 (1994)). Consequently, Claim Eight must be dismissed.

### F. Claim Nine: Injunctive Relief

In their Motion, Defendants note, correctly that injunctive relief, like punitive damages, is not recognized as an independent cause of action under Ohio law. Doc. #33, PAGEID #307 (citations omitted). Further, Defendants argue, the nature of the injunctive relief sought in the prayer for relief—that Defendants be enjoined "'from contacting end user customers of Plaintiff's [sic] for any purpose other than customer service or return processing of past orders' and 'contacting existing Lizard customers in accordance with the terms of the Sale Representative and Engagement Letter[,]'" Doc.

16

#33, PAGEID #307 (quoting Doc. #29, PAGEID #246), is inappropriate. They note that it is undisputed that "the contracts between the contracts between the parties were terminated[,]" *id.*, and argue that the injunction sought by Plaintiffs goes beyond the scope of any agreement between the parties and, in effect, is "asking the Court to authorize a monopoly[.]" *Id.*, PAGEID #308.

Plaintiffs do not claim that injunctive relief is a cognizable cause of action; nor could they reasonably do so. Accordingly, Claim Nine must be dismissed.

### IV. DISMISSAL WITH PREJUDICE EXCEPT PRAYER FOR INJUNCTIVE RELIEF

Defendants move that the Court "dismiss [Claims] II, III, IV, V, VI, VIII, and IX of the Second Amended Complaint with prejudice." Doc. #33, PAGEID #308. The Court recognizes that Plaintiffs have already had three opportunities to set forth valid claims for relief; their failure to do so weighs against granting further leave to amend. *Cf. Hughes v. Lavender*, No. 2:10-cv-674, 2011 WL 1233481, at *4 (S.D. Ohio Mar. 29, 2011) (Kemp, Mag. J.) (allowing leave to further amend because plaintiff had "amended his complaint on only one other occasion in order to correct the first name of one of the Defendants."). Moreover, "courts need not give leave to amend when doing so would be futile. Amending would be futile if a proposed amendment would not survive a motion to dismiss." *SFS Check, LLC v. First Bank of Delaware*, 774 F.3d 351, 355 (6th Cir. 2014) (citations omitted).

An examination of the Second Amended Complaint and the parties' briefing on the Motion leads the Court to conclude that, with one exception, Plaintiffs' claims should be dismissed with prejudice, for three reasons. <u>First</u>, as discussed above, Claims Eight

(Punitive Damages) and Nine (Injunctive Relief) are not recognized causes of action. <u>Second</u>, nothing in the pleadings or briefing suggests that Plaintiffs can set forth viable claims for relief as to Claims Two (Detrimental Reliance/Promissory Estoppel), Three (Unjust Enrichment), Five (Accounting) and Six (Breach of Fiduciary Duty) that would be factually distinct from Claim One (Breach of Contract). Thus, any amended claim would be subject to dismissal for the reasons discussed above. <u>Third</u>, because the Bilateral and Sales Representative Agreements were terminable at-will and did not contain non-compete agreements, any attempt to amend Claim Four (Tortious Interference) would be futile. In sum, there is no reason to conclude that a Third Amended Complaint could survive a motion to dismiss as to the above seven claims. Accordingly, dismissal with prejudice is appropriate.

Further, the facts alleged in and exhibits attached to the Second Amended Complaint do not permit the reasonable inference that Plaintiffs, even if they prevailed on the merits of Claims One and Seven, would be entitled to the permanent injunction sought in their prayer for relief. Doc. #29, PAGEID #246. However, Plaintiffs' memorandum *contra*, Doc. #38, PAGEID #343, raises the possibility that they could set forth an appropriate prayer for injunctive relief with respect to the allegedly defamatory statements that form the basis of Claim Seven. Thus, Plaintiffs' prayer for injunctive relief is stricken without prejudice, and Plaintiffs may file a Third Amended Complaint for the sole purpose of setting forth a proper prayer for injunctive relief, subject to the strictures of Rule 11.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, Doc. #33, is SUSTAINED. Claims Two, Three, Four, Five, Six, Eight and Nine in Plaintiffs' Second Amended Complaint are DISMISSED WITH PREJUDICE. Judgment shall ultimately enter in favor of Defendants and against Plaintiffs on those claims. Plaintiffs' prayer for injunctive relief is stricken without prejudice. Plaintiffs may, within fourteen days of this Entry, file a Third Amended Complaint containing Claims One and Seven, which shall proceed to discovery, and a modified prayer for injunctive relief

Date: May 11, 2017

_____
WALTER H. RICE
UNITED STATES DISTRICT JUDGE